# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

| | |
|---|---|
| H.T., *A Minor, By And Through her Legal Guardian,* MILAGRO ALMODOVAR, *Individually And On Behalf Of All Others Similarly Situated*, <br><br> Plaintiff, <br><br> v. <br><br> BYTEDANCE, INC.; BYTEDANCE LTD.; TIKTOK LTD.; TIKTOK INC.;TIKTOK PTE. LTD.; and TIKTOK U.S. DATA SECURITY, INC., <br> Defendants. | Case No._____ <br><br> **JURY TRIAL DEMANDED** |

## CLASS ACTION COMPLAINT

Plaintiff H.T. ("Plaintiff"), a minor, by and through her legal guardian, Milagro Almodovar, on behalf of herself and all others similarly situated ("Class Members") (collectively "Plaintiffs"), hereby alleges the following against defendants ByteDance Inc., ByteDance Ltd., TikTok Ltd., TikTok Inc., TikTok Pte. Ltd., and TikTok U.S. Data Security, Inc. (collectively, "TikTok" or "Defendants") to obtain damages, restitution, and/or injunctive relief for herself and on behalf of the proposed Class as defined herein.  Plaintiff makes the following allegations upon information and belief, the investigation of her counsel, and facts that are of public record, except as to her allegations, which are made with personal knowledge.

## I.   INTRODUCTION

1.    TikTok operates one of the world's largest social media platforms that reaches millions of Americans under the age of 18.

2.      This action arises out of Defendants' unlawful practice of permitting and encouraging Plaintiff and children under the age of 18 to create user accounts on the TikTok Application ("App") and www.tiktok.com ("Website") (collectively "Platform"), for the purpose of collecting intimate, deeply intrusive data points about them, their online behavior, and other Personally Identifiable Information ("PII").  Defendants have knowingly collected this PII and other intrusive data points without the children's parents' knowledge or consent.  Defendants utilize this unlawfully collected PII to provide personally curated content that will keep children engaged with the Platform, so that Defendants can serve them copious amounts of behavioral advertising and/or share their information with third parties.

3.      The Platform's user base is disproportionately made up of children.  From the outset, Defendants considered U.S. teens a "golden audience."[1]

4.      Indeed, Defendants know that the Platform is an attractive social media destination for children.  Nonetheless, Defendants have a history of knowingly allowing children under the age of 18 to create and use accounts on the Platform without their parents' knowledge or consent, have collected extensive data from those children, and have failed to comply with parents' requests to delete their children's accounts and PII.

5.      In fact, this conduct forced the United States to file a complaint against Musical.ly and Musical.ly Inc.,[2] alleging that Defendants' were unlawfully collecting and using the PII of children in their operation of their free online video-sharing app. *United States of America v. Musical.ly, et al.*, No. 2:19-cv-1439 (C.D. Cal. Feb. 27, 2019) (Dkt. No. 1).

---

[1] Paul Mozur, *Chinese Tech Firms Forced to Choose Market: Home or Everywhere Else*, N.Y. TIMES (August 9, 2016).
[2] Defendants TikTok Ltd. and TikTok Inc. were formally Musical.ly and Musical.ly Inc.

6.      On March 27, 2019, Musical.ly and Musical.ly, Inc. (respectively renamed TikTok Ltd. and TikTok Inc. in April 2019), entered into a Stipulated Order for Civil Penalties, Permanent Injunction, and Other Relief in the Central District of California. *United States v. Musical.ly, et al*, No. 2:19-cv-01439-ODW-RAO (C.D. Cal. March 27, 2019) (Dkt. No. 10).  The order imposed a then record $5.7 million civil penalty for violations of the COPPA Rule (defined below), 16 C.F.R. pt. 312, and Section 5 of the FTC Act, 15 U.S.C. § 45; required Defendants to destroy PII of younger children; remove accounts of users whose age could not be identified; enjoined Defendants from violating the COPPA Rule; and required Defendants to retain certain records related to compliance with the COPPA Rule and the 2019 Permanent Injunction.

7.      Musicl.ly's quick resolution of the complaint, combined with its name change, might have indicated an intent to reform its business practices with respect to the manner in which it handled the PII of children.  Unfortunately, this has not been the case.

8.      Defendants own and control the Platform, which utilizes the 'For You Page' ("FYP").  The FYP is a personalized feed of content, algorithmically tailored to each user's interests and preferences, as determined by said users engagement and activity on the platform.  In practice, the FYP operates by collecting user PII and other sensitive data points so that the App and/or Website can solicit targeted advertisements curated to the user.  Indeed, Defendants' App, Website, and overall business model are particularly attractive to minor children, evidenced by the fact that Defendants' routinely encourage and allow children under the age of 18 to create, use, and maintain TikTok accounts without their parents' knowledge or consent and continuously fail to comply with parent requests to delete the minor user accounts and PII.

9.      Unbeknownst to the Plaintiff, minor users, and their parents, Defendants actively collected and tracked users' PII and other sensitive information without providing direct notice or

obtaining verifiable parental consent.  This conduct violated the Children's Online Privacy Protection Act of 1998 ("COPPA") and its implementing regulation, the Children's Online Privacy Protection Rule ("COPPA Rule"), which safeguard children's privacy and safety online.

10.     Plaintiff and minor children used the App and Website for its marketed and intended purpose as a social media platform, providing sensitive data and PII to curate a FYP despite being underage and not having received proper notice from Defendants nor having provided proper consent to Defendants.  Additionally, Plaintiff and minor children's sensitive personal data and PII was, and continues to be, collected by Defendants' and distributed to various third parties to aid Defendants in their marketing and advertising efforts.

11.     Defendants' actively and intentionally market their App and Website to minor children, and due to such practices, Defendants' must comply with COPPA.  To comply, Defendants' are required to provide parents of minor users with notice of their data collection practices, and secure verifiable parental consent before beginning collection of or making any use of a minor user's sensitive information or PII.

12.     Defendants', through their prior app Muiscal.ly, have been on notice since 2019 that their data collection practices actively violate COPPA.  Even with this notice, Defendants' continue to violate COPPA, albeit under a new name.

13.     As a result of Defendants continued violations of COPPA, and its failure to abide by the terms of the March 27, 2019 Permanent Injunction, on August 2, 2024 the Department of Justice filed a Complaint for Permanent Injunction, Civil Penalties, and Other Equitable Relief (the "DOJ Complaint") against Defendant's, complaining of Defendant's continued wrongful collection and misuse of minors' PII without parental consent in violation of COPPA and its

obligations under the 2019 Permanent Injunction. *See United States v. Bytedance, Ltd., et al.* (Case No. 2:24-cv-06535-ODW-RAO) (C.D. Ca.) (J. Wright).

14.     Despite these two lawsuits, Defendants continue their illegal business practices by collecting minor users' sensitive personal data and/or PII without securing adequate verifiable consent from the minors' parents.

15.     Young children are unable to consent, in any capacity, to the collection of their sensitive personal data and PII, nor do they fully understand the risks and repercussions of having such information shared.

16.     Defendants have breached, and continue to breach, their statutory and common law obligations to Plaintiff, minor children, and the parents of minor children by, *inter alia*: (1) collecting PII and other sensitive personal data from Plaintiff and minor children; (2) failing to design and monitor their App and Website in a way that safeguards Plaintiff and minor children from being able to create, use and maintain an account without verifiable parental consent; (3) failing and/or refusing to directly notify parents of the types of information Defendant constantly collects online from its minor users; (4) failing and/or refusing to inform parents how Defendants utilize the information they collect from its minor users; and (5) failing and/or refusing to obtain verifiable consent from parents to collect, use, disclose, and/or sell their children's PII and/or other sensitive data.

17.     As a result of Defendants' misconduct, Plaintiff and other Class Members were harmed and suffered numerous injuries, including; (1) invasion of privacy; (2) diminution of value of Privacy Information; (3) statutory damages; and (4) the continued and ongoing risk to their PII.

18.     Accordingly, Plaintiff, through her parents and/or guardians, brings this action for the relief asserted herein, on behalf of herself and the Classes of similarly-situated minors whose

privacy rights have, like Plaintiff, been violated by Defendants, for damages, restitution, unjust enrichment, and appropriate injunctive and/or equitable relief to address Defendants' unlawful practices.

## II.    JURISDICTION AND VENUE

19.    This Court has subject matter jurisdiction pursuant to the Class Action Fairness Act, 28 U.S.C. § 1332(d)(2) because this is a class action where the amount in controversy exceeds the sum or value of $5 million, exclusive of interest and costs, there are more than 100 putative members in the proposed class, and at least one Class Member (*e.g.*, Plaintiff) is a citizen of a state different from Defendant.

20.    The Court also has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367 because all claims alleged are part of the same case or controversy.

21.    This Court has personal jurisdiction over Defendants because they purposefully availed themselves of the forum. Defendants offer and advertise the TikTok application to millions of Florida residents and Class Members. Plaintiff's claims arise out of or relate to that purposeful availment as Plaintiff alleges that her data was collected, stored, used, and sold without her informed consent or without the consent of her legal guardian, Milagro Almodovar, related to her use of the TikTok application. Accordingly, the exercise of personal jurisdiction here comports with traditional notions of fair play and substantial justice and is therefore appropriate.

22.    Venue is proper in this Court under 28 U.S.C. § 1391 because a substantial part of the events that gave rise to Plaintiff's claims took place within this District, Plaintiff resides in this District, and Defendant does business in this District.

### III.   PARTIES

####    A.   **Plaintiff**

23.   Plaintiff Milagro Almodovar is the mother of H.T., a minor who used TikTok. Plaintiff is a citizen of the state of Florida.

24.   This action is brought on minor child H.T.'s behalf by her legal guardian.

25.   During the Class Period, H.T. created and used a TikTok account (while under the age of 13) and viewed content on the TikTok platform (while under the age of 18).

26.   During the Class Period, Defendants collected H.T.'s PII for the purpose of tracking H.T.'s activity and utilizing targeted advertisements.

27.   Defendants never obtained consent from nor notified H.T.'s parent and legal guardian, Milagro Almodovar, at any point prior to or during its collection and use of H.T.'s PII.

28.   Defendants were bound by the 2019 Permanent Injunction that prohibited Defendants from collecting Personal Information from children, and therefore this conduct could not have reasonably been discovered earlier through investigation.

####    B.   **Defendants**

29.   Defendants are a series of interconnected companies that operate the TikTok social media platform.   Defendant ByteDance Ltd. is the parent company that oversees the entire conglomerate.   The corporate structure is as follows:



### Defendant ByteDance Ltd.

30.     Defendant ByteDance Ltd. is a Cayman Islands company.  It has had offices in the United States and in other countries.  Defendant ByteDance Ltd. Transacts and/or has transacted business in this District and throughout the United States.

### Defendant TikTok Ltd.

31.     Defendant TikTok Ltd. is a Cayman Islands company with its principal place of business in Singapore or Beijing, China.  Defendant TikTok Ltd. transacts and/or has transacted business in this District and throughout the United States.

### Defendant TikTok Inc.

32.     Defendant TikTok Inc. is California corporation with its principal place of business at 5800 Bristol Parkway, Suite 100, Culver City, California 90230.  Defendant TikTok Inc. transacts and/or has transacted business in this District and throughout the United States.

### Defendant TikTok U.S. Data Security Inc.

33.     Defendant TikTok U.S. Data Security Inc. is a Delaware corporation with its principal place of at 5800 Bristol Parkway, Suite 100, Culver City, California 90230.  Defendant

TikTok U.S. Data Security Inc. transacts and/or has transacted business in this District and throughout the United States.

### Defendant ByteDance Inc.

34.     Defendant Byte ByteDance Inc. is a Delaware corporation with its principal place of business at 250 Bryant Street, Mountain View, California, 94041.  Defendant ByteDance Inc. transacts or has transacted business in this District and throughout the United States.

### Defendant TikTok Pte. Ltd.

35.     Defendant TikTok Pte. Ltd. is a Singapore company with its principal place of business at 8 Marina View, Level 43, Asia Square Tower 1, Singapore 018960.  Defendant TikTok Pte. Ltd. transacts and/or has transacted business in this District and throughout the United States.

36.     Upon information and belief, a group of ByteDance Ltd. and TikTok Inc. executives, including, but not limited to, Zhang Yiming, Liang Rubo, Zhao Penyuan, and Zhu Wenjia, direct and control TikTok's core features and development.  Since 2019, ByteDance Ltd. and TikTok Inc. have promoted the App and/or Website in the United States, spending hundreds of millions of dollars on advertising, employing U.S. based staff and executives, and developing and distributing the App and/or Website to run on any Wi-Fi enabled device, including, but not limited to, Apple and Android devices.

37.     ByteDance Ltd. and TikTok Inc. are responsible for developing, providing, promoting, and supporting the App and/or Website in the United States.

38.     TikTok Pte. Ltd. serves as the U.S. distributor of the App through the Apple App Store and Google Play Store.

39.     TikTok Ltd. identifies itself as the developer of the App in the Apple App Store, and TikTok Pte. Ltd. identifies itself as the developer of TikTok in the Google Play Store.  The Website domain is registered to TikTok Ltd.

40.     Beginning in or about 2023, TikTok Inc. transferred the PII of children to TikTok U.S. Data Security Inc., which has illegally maintained minor users' sensitive personal data and/or PII without securing adequate verifiable consent from the minors' parents.

41.     Additionally, Defendants share officers and directors.  For example, TikTok Inc.'s chief executive officers – Kevin Mayer, V. Pappas, and Shou Zi Chew – between 2020 and the present, have simultaneously held senior positions at ByteDance Ltd. In fact, ByteDance Ltd.'s chief executive officers – Zhang Yiming and Liang Rubo – have also simultaneously served as directors of TikTok Ltd.

42.     TikTok Inc.'s Global Security Officer – Roland Cloutier – also served as ByteDance Ltd.'s primary cyber risk and data security support officer.

43.     Defendants intertwine their finances, as ByteDance Ltd. provides compensation and benefits to TikTok Inc.'s chief executive officers.  Additionally, TikTok Inc. employees are able to participate in ByteDance Ltd.'s stock option plan.

44.     On information and belief, Defendants have one centralized bank account for ByteDance Ltd.'s plethora of products, including TikTok.  Defendants operate on a 'shared services' model, in which ByteDance Ltd. provides legal, safety, and privacy resources for its subsidiaries.

## IV.   FACTUAL ALLEGATIONS

### A.   Defendants Knowingly Violated COPPA

45.     In February 2019, the United States Department of Justice filed a complaint against Musical.ly and Musical.ly, Inc., - the Platform's predecessor – alleging violations of the COPPA Rule and Section 5 of the FTC Act, 15 U.S.C. § 45.

46.     The Department of Justice alleged that Musical.ly – the Platform's predecessor – had collected and used sensitive personal data and/or PII from children under the age of 18 in violation of COPPA.  These violations included: (1) the failure to direct notify parents of the information collected from minor users; (2) how such collected information was used and/or going to be used; and (3) the failure to obtain verifiable parental consent prior to collecting sensitive personal data and/or PII from children. *United States v. Musical.ly, et al*., No. 2:19-cv-01439-ODW-RAO (C.D.  Cal.  Feb.  27, 2019) (Dkt. No. 1).

47.     Soon thereafter, in March 2019, the Honorable Otis D. Wright II entered a Stipulated Order for Civil Penalties, Permanent Injunction, and Other Relief against TikTok's predecessor, Musical.ly.  *Id*. at Dkt. No. 10 (2019 Permanent Injunction).

48.     As a result of the 2019 Permanent Injunction, TikTok's predecessors were enjoined from further violating the COPPA Rule, including by: (1) "failing to make reasonable efforts, taking into account available technology, to ensure that a parent of a child receives direct notice of Defendants' practices with regard to the collection, use, or disclosure of PII from children;" and (2) "failing to obtain verifiable parental consent before any collection, use, or disclosure of PII from children." 2019 Permanent Injunction at 8.

49.     The acquisition of Musical.ly by ByteDance, and eventual rebranding to TikTok, did not change the Defendant's obligations under the 2019 Permanent Injunction.

50.     Notably, on June 12, 2020, TikTok Inc. informed the FTC that "[o]n May 11, 2019…[it] took offline all US accounts that did not go through [its recently imposed] age gate. These accounts…were not accessible to the Company.  TikTok did not use or disclose the information for any purpose." Additionally, TikTok Inc. informed the FTC that it "completed on May 24, 2020" the deletion of children's sensitive personal data and/or PII as required by the 2019 Permanent Injunction.  In fact, V. Pappas, acting as the "GM of TikTok," certified on TikTok's behalf, and under penalty of perjury, that the prior statement was true and correct.

51.     According to the August 2, 2024 Department of Justice complaint, after a follow-up inquiry by the FTC, TikTok Inc. acknowledged that its June 12, 2020, claims had been false. In fact, TikTok Inc. had retained and been using data that it previously represented it "did not use," was "not accessible" to it, and was "delet[ed]." That data included PII and other data of child, teen, and adult users, including IP addresses, device IDs, device models, and advertising IDs.

**B.     Defendants' TikTok Platform, Data Collection, and Account Creation**

52.     Defendants operate a video-based social media platform that consumers may access via the Website or the App.

53.     The Platform allows users, including minors, to create, upload, and share short form videos.  Joining the Platform is free.  Defendants generate revenue from the Platform through advertising and eCommerce, including, but not limited to, TikTok for Business and in-app purchases via the TikTok Shop.

54.     The Platform utilizes the FYP, which is a personalized feed of content, algorithmically tailored to each user's interests and preferences, as determined by said users engagement and activity on the platform.  In practice, the FYP operates by collecting user PII and

other sensitive data points so that the App and/or Website can solicit targeted advertisements curated to the user.

55.    According to the Platform's Privacy Policy, the Platform collects three categories of user information: (1) information provided by the user; (2) information automatically collected by the Platform; and (3) information collected from other sources.

**<u>User-Provided Information</u>**

56.    The Platform collects user information when the user "create[s] an account, upload[s] content, contact[s] [TikTok] directly, or otherwise use[s] the platform."

57.    In fact, the Platform collects "[a]ccount and profile information, such as name, age, username, password, language, email, phone number, social media account information, and profile image."

58.    The Platform also collects "[u]ser-generated content, including comments, photographs, livestreams, audio recordings, videos, text, hashtags, and virtual item videos that [user] choose[s] to create with or upload to the Platform [along with] the associated metadata, such as when, where, and by whom the content was created." Notably, "[e]ven if you are not a user, information about you may appear in User Content created or published by users on the Platform. When you create User Content, we may upload or import it to the Platform before you save or post the User Content…" Further, "[i]f [a user] appl[ies] an effect to [their] User Content, [the Platform] may collect a version of [the] User Content that does not include the effect."

59.    The Platform collects user messages, "which include[s] information you provide when you compose, send, or receive messages through the Platform's messaging functionalities. Th[is] include[s] messages you send through our chat functionality when communicating with sellers who sell goods to you, and your use of virtual assistants when purchasing items through the

Platform.  That information includes the content of the message and information about the message, such as when it was sent, received, or read, and message participants."

60.     The Platform collects "[i]nformation, including text, images, and videos, found in your device's clipboard…" along with account verification information.

61.     The Platform collects user payment information, "including payment card numbers or other third-party payment information [] where required for the purpose of payment, and billing and shipping address."

62.     Finally, the Platform collects user "phone and social network contacts" which includes the "names, phone numbers, and email addresses" of said contacts.

### Automatically Collected Information

63.     The Platform will "automatically collect certain information from [the user] when [they] use the Platform, including internet or other network activity information such as [the user's] IP address, geolocation-related data, unique device identifiers, browsing and search history (including content you have viewed in the Platform), and cookies."

64.     The Platform will automatically collect user usage information, including data pertaining to the "use of the Platform and any other User Content [] generate[d] through or upload[ed] to [the] Platform."

65.     The Platform will automatically collect information about the device used to access the Platform, including the user's "IP address, user agent, mobile carrier, time zone settings, identifiers for advertising purposes, model of your device, the device system, network type, device IDs, your screen resolution and operating system, app and file names and types, keystroke patterns or rhythms, battery state, audio settings and connected audio devices." Additionally, the Platform

"may also associate [the user] with information from devices other than those you use to log-in to the Platform."

66.     The Platform will automatically collect information about the user's "approximate location, including location information based on [the user's] SIM card and/or IP address.  In addition, [the Platform] collect[s] location information…if you choose to add the location information to your User Content." Further, if a user is "still using an older version [of the Platform] that allowed for precise…GPS information [] and you granted [the Platform] permission to do so, we may collect such information."

67.     The Platform will automatically collect image and audio information, including "the videos, images and audio that are a part of your User Content, such as identifying the objects and scenery that appear, the existence and location within an image of face and body features and attributes, the nature of the audio, and the text of the words spoken in your User Content.  [The Platform] may collect this information to enable special video effects, for content moderation, for demographic classification, for content and ad recommendations, and for other non-personally-identifying operations." Further, the Platform "may collect biometric identifiers and biometric information as defined under U.S. laws, such as faceprints and voiceprints, from [] User Content."

68.     The Platform will automatically collect user metadata, including metadata describing "how, when, where, and by whom the piece of User Content was created, collected, or modified and how that content is formatted.  It also includes information, such as your account name, that enables other users to trace back the User Content to your user account.  Additionally, metadata includes data that you choose to provide with your User Content, e.g., any hashtags used to mark keywords to the video and captions."

69.     The Platform makes use of cookies, as well as other similar technologies such as web beacons and/or flash cookies.   These technologies are used to "automatically collect information, measure and analyze how you use the Platform, including which pages you view most often and how you interact with content, enhance your experience using the Platform, improve the Platform, provide you with advertising, and measure the effectiveness of advertisements and other content.

## Other Source Information

70.     The Platform collects information from other sources.  For instance, if a user signs up for the Platform "using a third-party service such as Facebook, Twitter, Instagram, or Google, or link your TikTok account to a third-party service, we may collect information from the service– for example, your public profile information (such as nickname), email, and contact list."

71.     The Platform collects information from "[a]dvertisers, measurement and other partners [who] share information with [the Platform] about you and the actions you have taken outside of the Platform, such as your activities on other websites and apps or in stores, including the products or services you purchased, online or in person.  These partners also share information with us, such as mobile identifiers for advertising, hashed email addresses and phone numbers, and cookie identifiers, which we use to help match you and your actions outside of the Platform with your TikTok account.  Some of our advertisers and other partners enable us to collect similar information directly from their websites or apps by integrating [the TikTok Pixel]."

72.     Finally, the Platform may collect information about users from "others, including where you are included or mentioned in User Content, direct messages, in a complaint, appeal, request or feedback submitted to us, or if your contact information is provided to us" and information collected from "organizations, businesses, people, and others, including, for example,

publicly available sources, government authorities, professional organizations, and charity groups."

73.     Defendants were, at all relevant times, aware that minor children accessed and engaged with the Platform and actively sought to increase viewing and engagement from youth populations promulgating content directed toward those children, all while publicly representing that such minors were not permitted to access the Platform.

74.     In or about March 2019, Defendants required users to input a birthdate when creating an account on the Platform ("Age-gate").

75.     In the United States, children who self-identify as being under the age of 13 are offered TikTok for Younger Users ("Kids Platform").

76.     On the Kids Platform, a user may view videos, but the user cannot upload videos, post information publicly, or message other users.  Notably, parents of minor users are neither notified nor asked to consent to the creation of an account on the Kids Platform.

77.     If a user indicates that they are over the age of 13, even if they are not, the user is permitted to create a regular account on the Platform.

78.     Defendant's implemented the Age-gate following the aforementioned 2019 DOJ action.  In its current form, the Age-gate is utterly insufficient.  First, minor users have multiple attempts to create an account.  If they first enter a birthday that triggers the Age-gate, then they may easily return to the sign-up and enter a birthday that does not trigger the Age-gate.  The Platform does nothing to prevent this workaround.

79.     Second, minor users were allowed to utilize third party login credentials from Instagram and/or Google, identifying these minor users as "age unknown" accounts.  This resulted

in the creation of millions of accounts for which Defendant's did not know, nor attempted to learn, the age of the user.

80.     Regardless of whether a minor user accesses and uses the Platform or the Kids Platform, Defendant's violate the COPPA rule by illegally collecting and using sensitive personal data and/or PII of minor users without parental notice and verifiable parental consent.

81.     As detailed above, minor users with accounts on the Platform have their PII collected, including their full name, age, email address, phone number, personal identifiers from their device(s) used to access the Platform, social media account information, and profile image(s) including videos, and audio filings containing the user's image and voice and the meta data associated with such media.  Further, these minor users have their usage information, device information, location data, and other data from cookies and/or web beacons collected.

82.     For minor users with accounts on the Kids Platform, Defendants still collects sensitive personal data and/or PII, including device IP address and other unique device identifiers. Further, the Kids Platform also collects user activity, device information, mobile carrier information, and other app information.  All of this information is collected to amass profiles on the minor users.

83.     Defendants' practice of allowing children to sign up for an account on the Platform using third party credentials has allowed, and continues to allow, minor users to gain access to adult content and features of the Platform without providing age information.  Without parental notice and verifiable parental consent, Defendants collected and maintained, and continue to collect and maintain, vast swaths of sensitive personal data and/or PII from minor users who created and use these accounts.

84.     In 2022, Defendants closed the third-party credential loophole by requiring all users to go through the Platform's Age-gate.  While this loophole was closed, it did not solve the aforementioned issue of multiple sign-ups to defeat the Age-gate.

**C.     Children's Online Privacy Protection Act**

85.     Codified at 15 U.S.C. § 6501, et seq., COPPA was passed by Congress in 1998 in response to public concerns that children's online activities were being tracked by website operators and other online services.  Lawmakers designed COPPA to "maintain the security of personally identifiable information of children collected online" and to "protect children's privacy by limiting the collection of PII from children without parental consent."

86.     COPPA applies to any operator of a commercial website or online service that directs its services toward children under 13 years of age, as well as those who collect, use, and/or disclose PII from children.  If a party subject to COPPA has actual knowledge that they are collecting PII from users of a child-directed site or service, then the FTC considers these entities "operators" as defined in COPPA.

87.     Indeed, COPPA "prohibits unfair…acts or practices in connection with the collection of, use of, and/or disclosure of PII from and about children on the internet.  16 C.F.R. § 312.1.

88.     In pertinent part, COPPA provides that:

> "It is unlawful for an operator of a website or online service directed to children, or any operator that has actual knowledge that it is collecting PII from a child, to collect PII from a child in a manner that violates the regulations prescribed [by the Federal Trade Commission]." 15 U.S.C. § 6502(a).

89.     Thus, COPPA prohibits, *inter alia*, the collection of persistent identifiers for behavioral advertising absent parental notice and verifiable parental consent.   C.F.R.   §§ 312.5(c)(7), 312.2.

90.     COPPA specifically requires an "operator" to give notice to parents and obtain the parents verifiable consent before collecting children's PII online.   16 C.F.R.   §§ 312.4 & 312.5. This includes, but is not limited to: (1) posting a privacy policy on its website or online service providing clear, understandable, and complete notice of its information practices, including what information the website operator collects from children online, how it uses such information, its disclosure practices for such information, and other specific disclosures set forth by COPPA; (2) Providing clear, understandable, and complete notice of its information practices, including specific disclosures directly to parents; and (3) obtaining verifiable parental consent prior to collecting, using, and/or disclosing PII from children.

91.     Notably, the FTC has interpreted "operators of website[s] or online services directed to children" and "operators with actual knowledge that they are collecting PII online from children under 13" as being "subject to strict liability for COPPA violations."[3]

92.     Websites or online services that collect sensitive personal data and/or PII from users of other child directed websites or online services are deemed "child-directed" if the website or online service "has actual knowledge that it is collecting PII directly from users of another website or online service directed to children." 16 C.F.R.   § 312.2.

---

[3] Statement of Joseph J.  Simons & Christine S.  Wilson, *Regarding FTC and People of the State of New York v. Google LLC and YouTube, LLC*, FEDERAL TRADE COMMISSION, https://www.ftc.gov/system/files/documents/public_statements/1542922/simons_wilson_google_youtube_statement.pdf (accessed March 19, 2025).

93.     When determining whether a website and/or online service is "directed to children" for purposes of COPPA, the FTC will:

> "consider [the website's or online service's] subject matter, visual content, use of animated characters or child-oriented activities and incentives, music or other audio content, age of models, presence of child celebrities or celebrities who appeal to children, language or other characteristics of the Web site or online service, as well as whether advertising promoting or appearing on the Web site or online service is directed to children." 16 FR § 312.2.

94.     In 2013, COPPA was updated ("COPPA Update") to provide additional protection for children against online tracking and to "giv[e] parents greater control over the online collection of their children's PII."

95.     Indeed, the COPPA Update broadened the statutes definition of children's "PII" to include persistent identifiers – such as cookies – that track children's online activity and geolocation information, as well as children's posted photos, videos, and audio recordings.

96.     This explicit inclusion of persistent identifiers and geolocation data in COPPA's updated definition of PII reveals the FTC's intent to deter advertising companies and internet operators – such as Defendants – from exploiting young children for profit.

97.     Pursuant to Section 1303(c) of COPPA, 15 U.S.C. § 6502(c), and Section 18(d)(3) of the FTC Act, 15 U.S.C. § 57a(d)(3), a violation of COPPA constitutes an unfair … act or practice in or affecting commerce in violation of Section 5(a) of the FTC Act, 15 U.S.C. § 45(a).

98.     While COPPA does not provide a private right of action, the United States Court of Appeals for the Ninth Circuit recently held that "COPPA's preemption clause does not bar state-law causes of action that are parallel to, or proscribe the same conduct forbidden by, COPPA." *Jones v. Google LLC*, 73 F.4th 636 (9th Cir.  2023).

99.    Therefore, individuals harmed by conduct which violates COPPA – such as the conduct described herein – may seek to redress said harms via state law causes of action.

**D.    Plaintiff's Experience**

100.    At all relevant times, Plaintiff had an account on the Platform and was under the age of 18.

101.    When Plaintiff created an account on the Platform she was under the age of 13, and Defendants did not provide notification to Plaintiff's parent, Milagro Almodovar.

102.    Plaintiff's parent did not provide verifiable consent to Defendants prior to them collecting Plaintiff's PII.

103.    Neither Plaintiff nor her parent could have reasonably discovered this conduct earlier through investigation, as Defendants represented to be abiding by the 2019 Permanent Injunction designed to prohibit this conduct throughout the relevant time frame.

104.    When Plaintiff interacted with the Platform, Defendants collected her PII for the purpose of tracking, profiling, and targeting Plaintiff with curated content and advertisements.

105.    Plaintiff has a continued interest in protecting her sensitive PII from Defendants continuous violations of COPPA.

**E.    Defendants Had Actual Knowledge That They Were Collecting, Storing, And Using The PII Of Children Under The Age of 18**

106.    The Platform utilizes internal algorithms to predict user's ages based on their online behavior.  However, Defendants refuse to use its age-prediction algorithm to identity and remove children under the age of 18 from the Platform.

107.    Accounts belonging to children are regularly brought to Defendants' attention when a user reports a video for violating one of the Platforms policies.  These flagged videos are added to "video queues" and reviewed by human content moderators.  These moderators review the

flagged videos and determine whether they comply with Platforms policies.  If a moderator encounters a video depicting a child they believe to be under the age of 18, the moderator may apply labels to designate suspected child users.  While moderators are authorized to remove specific videos from the Platform, they lack the authority to delete, remove, or downgrade the account - even if it is clear the account belongs to a child younger than 13.  Instead, after they apply the underage label, the video is sent to a separate content moderation team who assesses whether accounts belong to underage users (the "underage queue").

108.    This process, however, failed.  When these moderators initially tagged specific videos as depicting a child under the age of 18, the accounts were never referred to the secondary moderation team with authority to remove, delete, and/or downgrade the account.  Instead, the accounts remained active, and Defendants continued to collect, retain, and disclose the sensitive PII of children under the age of 18.  Additionally, the Platform continued to show these minor users adult content.

109.    Due to Defendants' severe recordkeeping deficiencies, they are unable and/or refuse to identify the number of accounts affected by this issue.  The limited records Defendants do have, however, indicate that millions of accounts were impacted by this shortcoming.

110.    Indeed, until at least September 2022, whenever Defendants' moderator teams identified a specific account that was correctly flagged as belonging to a child, Defendants did not delete the account.  Instead, the account remained live.

111.    Internal communications reveal that Defendants' employees were aware of the issue.  Notably, in a September 2021, Defendants' employees discussed the fact that accounts were being marked as banned for being underage but were not being deleted.  Additionally, these employees suggested that this practice had been occurring since mid-July 2020.  One employee

noted that she was seeing this "a lot" and "I run across usually like 3-4 accounts [like that] a day." Another employee expressed concern, stating "[t]hat [this] shouldn't be happening at all or we can get in trouble … because of COPPA."

112.    TikTok knew that many of its account holders were under 18 years of age.  Indeed, Defendants were unquestionably aware of both the problem and the Court Order to keep records of their COPPA compliance.  Yet, they choose to continue their data collection practices.

113.    In addition, Defendants retained children's sensitive personal data and/or PII long after they identified an account as belonging to a child.  For example, Defendants retain user activity logs for eighteen months.

114.    Defendants have retained children's sensitive personal data and/or PII in numerous database locations long after purportedly deleting their accounts.  Defendants have not documented and/or refuse to explain what information collected from users is saved long term, where the data is housed, why the data is/was in those locations, and why it was not deleted and/or stopped from being used by other users on the Platform.

115.    In this same vein, Defendants retained profile photographs of users that Defendants knew to be children under the age of 18.  For example, the Platform allows users to include other user's comments in their videos, which is displayed alongside the commenter's photograph and username.  When Defendants actually deleted/removed an account belonging to a child, that child's comment(s) remained in other users' posts, along with their profile photograph and username. These images had unique identifiers that tied each child's photograph, username, and comment to an account that Defendants knew had been deleted because it belonged to a child.

116.    Defendants' internal analyses show that millions of the Platforms U.S. users are children under the age of 18.  In fact, the number of U.S. Platform users that Defendants classified

as age 14 or younger in 2020 was *millions higher* than the U.S. Census Bureau's estimate of the total number of 13- and 14-year-olds in the United States.  This suggests that many of those users were children younger than 13, and many more under the age of 18.

117.   Defendants and their employees have long known that children misrepresent their ages to pass through the Platform's Age-gate.  In 2020, for example, a Platform moderator recognized that Defendants maintain accounts of children despite the "fact that we know the user is U13." Another employee admitted that Platform moderators were required to ignore any "external information" indicating that a user under review is a child under the age of 18.

118.   Indeed, Defendants had actual knowledge that children under 18 were actively using the Platform, and yet, Defendants failed to and/or refused to obtain verifiable parental consent before collecting the PII of those children in violation of COPPA, the FTC Act, and the consumer protection laws of many states.  These acts also constituted an intrusion upon the seclusion of children under 18 as well as a violation of their reasonable expectation of privacy.

**F.   Plaintiff and Class Members' PII has Financial Value**

119.   Described as the "new oil," data harvesting has erupted into one of the fastest growing industries in the country.  In fact, conservative estimates suggest that in 2018, data harvesting companies earned approximately $202 per mined/harvested American user.

120.   Disregarding Defendants blatant disregard for COPPA, they have unlawfully taken possession of and commercially exploited the sensitive personal data and/or PII of Plaintiff and other minor Class Members without their permission and without compensating them for use of their sensitive personal data and/or PII.

121.   Indeed, Defendants' illegal collection, retention, and disclosure of Plaintiff and minor Class Members sensitive personal data and/or PII has given Defendants a significant

advantage that cannot be cured.  Defendants Platform is one of the largest and most popular social media outlets in the world.  As a result of Defendants unlawful conduct, the Platforms algorithm now incorporates illegally collected data from millions of minor user's accounts.  The deep insights gleaned from this illegally collected and maintained data will enable Defendants to use the PII of children for, potentially, the duration of their lives.  Additionally, it will also solidify Defendants dominance in the market for child-related content.

122.     Defendant's illegal exploitation of Plaintiff and minor Class Member's sensitive personal data and/or PII, without just compensation, has caused Plaintiff and the minor Class Members to suffer significant injury, economic, and ascertainable loss.

## V.     <u>TOLLING OF THE STATUTE OF LIMITATIONS</u>

123.     Plaintiff and minor Class Members did not know and could not know about Defendants actions because Defendants purported to be abiding by the terms of the Permanent Injunction prohibiting such conduct

124.     Within the time period of any applicable statutes of limitation, Plaintiff and other minor Class Members did not know of Defendants' actions and could not have discovered through the exercise of reasonable diligence that Defendants were misrepresenting their actions.

125.     Plaintiff and the other minor Class Members did not discover, and did not know of, facts that would have caused a reasonable person to suspect that Defendants misrepresented their compliance with the Permanent Injunction; nor would a reasonable and diligent investigation have disclosed that Defendants had misrepresented such information about the true nature of their practices.

126.     For these reasons, all applicable statutes of limitation have been tolled by operation of the discovery rule for the claims asserted herein.

## VI.    CLASS ALLEGATIONS

127.    Plaintiff H.T., a minor, through her parent, brings this class action individually on behalf of herself and on behalf of all members of the following classes of similarly situated persons pursuant to Federal Rule of Civil Procedure 23.  As described below, this action satisfies the numerosity, commonality, typicality, adequacy, predominance, and superiority requirements of Rule 23(a) and 23(b)(3).

128.    Accordingly, Plaintiff seeks certification under Federal Rule of Civil Procedure 23 of the following Classes:

### Nationwide Class

All individuals residing in the United States (who are, or were, younger than 18 years old when they used TikTok) from whom Defendants collected and/or used PII during the relevant timeframe without notifying their parents and obtaining verifiable parental consent beforehand (the "Class").

### Florida Subclass

All individuals residing in the State of Florida (who are, or were, younger than 18 years old when they used TikTok) from whom Defendants collected and/or used PII during the relevant timeframe without notifying their parents and obtaining verifiable parental consent beforehand (the "Florida Class").

129.    Excluded from the Classes are (1) Defendant and its affiliates, parents, subsidiaries, officers, agents, and directors, any entity in which Defendant has a controlling interest; (2) all individuals who make a timely election to be excluded from this proceeding using the correct protocol for opting out; (3) those persons who have suffered personal injuries as a result of the facts alleged herein (4) any and all federal, state, or local governments, including but not limited to its departments, agencies, divisions, bureaus, boards, sections, groups, counsel, and/or subdivisions; and (5) all judges presiding over this matter or assigned to hear any aspect of this litigation, along with judicial clerks and staff, and immediate family members.

130.     Plaintiff reserves the right to modify or amend the foregoing Classes definition before the Court determines whether certification is appropriate.

131.     This action has been brought and may properly be maintained as a class action under Federal Rule of Civil Procedure 23 because there is a well-defined community of interest in the litigation and membership in the proposed Class is readily ascertainable.

### Numerosity – 23(a)(1)

132.     A class action is the only available method for the fair and efficient adjudication of this controversy.  The members of each Class are so numerous and geographically dispersed that individual joinder of all Class Members is neither practicable nor possible.  Plaintiff is informed and believes and, on that basis, alleges that the total number of Class Members is in the millions of individuals.  Membership in the Class will be determined by analysis of Defendant's records.

### Commonality – 23(a)(2) & (b)(3)

133.     Consistent with Rule 23(a)(2) and with Rule 23(b)(3)'s predominance requirement, Plaintiff and Class Members share a community of interest in that there are numerous common questions and issues of law and fact which predominate over any questions and issues solely affecting individual members, including, but not necessarily limited to:

     a.     Whether Defendant have or had a practice of collecting PII from children who were younger than 18 years old without notifying their parents and obtaining verifiable parental consent beforehand;

     b.     Whether Defendants have or had a practice of using PII from children who were younger than 18 years old without notifying their parents and obtaining verifiable parental consent beforehand;

     c.      Whether Defendants' practices violate COPPA and the COPPA Rule;

     d.     Whether Defendants engaged in unlawful business practices;

     e.     Whether Defendant engaged in unfair business practices in violation of the Florida Deceptive and Unfair Trade Practices Act, Fla. Stat. §§ 501.201, *et seq.*

     f.     Whether Defendant has unjustly received and retained monetary benefits from Plaintiff's minor child and Class Members by profiting off the use of their PII; and

     g.     Whether Class Members are entitled to damages and/or restitution, and if so, the method of computing damages and/or restitution.

134.    In the alternative, Plaintiff seeks certification under Rule 23(c)(4) with respect to one or more of the above issues or such other issues as may be identified in the future.

**Typicality – 23(a)(3)**

135.    Plaintiff's claims are typical of the claims of the Class. Plaintiff and Class Members had their sensitive personal data and/or PII compromised because of Defendants actions, including Defendants failure to notice minor user's parents and failure to secure verifiable parental consent.

**Adequacy – 23(a)(4)**

136.    Consistent with Rule 23(a)(4), Plaintiff is an adequate representative of each of the Class because Plaintiff is a member of the Class and is committed to pursuing this matter against Defendant to obtain relief for the Class. Plaintiff is not subject to any individual defense unique from those conceivably applicable to other Class Members or the Class in their entirety. Plaintiff anticipates no management difficulties in this litigation. Plaintiff has no conflicts of interest with the Class. Plaintiff's Counsel is competent and experienced in litigating class actions, including

extensive experience in privacy litigation.  Plaintiff intends to vigorously prosecute this case and will fairly, and adequately, protect Class interests.

## Predominance and Superiority – 23(b)(3)

137.  Consistent with Rule 23(b)(3), a class action is superior to any other available means for the fair and efficient adjudication of this controversy, and no unusual difficulties are likely to be encountered in the management of this class action.  Common issues in this litigation predominate over individual issues.  The issues discussed above in regard to commonality are more important to the resolution of this litigation than any individual issues.  The purpose of the class action mechanism is to permit litigation against wrongdoers even when damages to individual plaintiffs may not be sufficient to justify individual litigation.  Here, the damages suffered by Plaintiff and the Class Members are relatively small compared to the burden and expense required to individually litigate their claims against Defendant, and thus, individual litigation to redress Defendant's wrongful conduct would be impracticable.  Individual litigation by each Class Member would also burden and unreasonably strain the court system, and would result in undue delay.  Individual litigation creates the potential for inconsistent or contradictory judgments and increases the delay and expense to all parties and the court system.  By contrast, the class action device presents far fewer management difficulties and provides the benefits of a single adjudication, economies of scale, and comprehensive supervision by a single court.

## Ascertainability

138.  The Class is defined by reference to objective criteria, and there is an administratively feasible mechanism to determine who fits within the Class.  Defendants have access to names in combination with other identifying information of Class Members affected by the Defendants illegal conduct.

**Injunctive and Declaratory Relief**

139.     This class action is also appropriate for certification because Defendant has acted or refused to act on grounds generally applicable to Class Members, thereby requiring the Court's imposition of uniform relief to ensure compatible standards of conduct toward the Class Members and making final injunctive relief appropriate concerning the Class.  Defendant's policies and practices challenged herein apply to and affect Class Members uniformly.  Plaintiff's challenge of these policies and procedures hinges on Defendant's conduct concerning the Class in their entirety, not on facts or law applicable only to Plaintiff.  Unless a Class-wide injunction is issued, Defendant may continue to collect, maintain, and disclose Class Members' sensitive personal data and/or PII, and Defendant may continue to act unlawfully, as set forth in this Complaint.  Further, Defendant has acted or refused to act on grounds generally applicable to the Class and, accordingly, final injunctive or corresponding declaratory relief with regard to the Class Members as a whole is appropriate under F.R.C.P.  Rule 23(b)(2).

**VII.    CAUSES OF ACTION**

**COUNT 1**
**INTRUSION UPON SECLUSION**
**(UNDER FLORIDA LAW)**

140.     Plaintiff re-alleges and incorporates by reference all the allegations contained in the paragraphs 1 through 139 above as if fully set forth herein.

141.     As minor children, H.T. and Class Members had a legitimate expectation of privacy in their PII.  H.T. and Class Members were entitled to the protection of this information from disclosure to unauthorized third parties.

142.     Defendants intentionally and unreasonably intruded upon the seclusion of minor children, H.T. and Class Members, without the consent of H.T. and Class members, who were minors, or their parents or guardians.

143.     As set forth above, Defendants collected and sold the PII millions of minor children, without the consent of the minors or their parents, including, but not limited to: name, age, profile image, password, email, phone number, address, "approximate" location, social media account information, phone and social media contacts, messages sent to and received from other TikTok users, information in the clipboard of a user's device, and payment card number.

144.     Defendants intruded on private activities and information of minor children in violation of COPPA.

145.     Defendants' intrusion was highly offensive to a reasonable person.

146.     Defendants owed a duty to Plaintiff and Class Members to keep their PII confidential.

147.     Defendants permitted the public disclosure of H.T.'s and Class Members' PII to unauthorized third parties.

148.     The PII that was collected and disclosed without the Plaintiff's and Class Members' authorization was highly sensitive, private, and confidential.  The public disclosure of the type of PII at issue here would be highly offensive to a reasonable person of ordinary sensibilities.

149.     By permitting the unauthorized collection and disclosure, Defendants acted with reckless disregard for H.T. and Class Members' privacy, and with knowledge that such disclosure would be highly offensive to a reasonable person.  Furthermore, the disclosure of the PII at issue was not newsworthy or of any service to the public interest.

150.     Defendants acted with such reckless disregard as to the safety of H.T. and Class Members' PII to rise to the level of intentionally allowing the intrusion upon the seclusion, private affairs, or concerns of H.T. and Class Members.

151.     Plaintiff and Class Members have been damaged by the invasion of their privacy in an amount to be determined at trial.

**COUNT 2**
**UNJUST ENRICHMENT**
**(UNDER FLORIDA LAW)**

152.     Plaintiff re-alleges and incorporates by reference the allegations contained in paragraphs 1 through 139 above as if fully set forth herein.

153.     By obtaining and reselling H.T. and Class Members' PII, Defendants received a monetary benefit.  Defendants knew that it could sell the PII for financial gain and has retained that benefit.

154.     Defendants have unjustly received and retained monetary benefits from H.T. and Class Members—minor children—by profiting off the use of their PII under unjust circumstances such that inequity has resulted.

155.     Defendants have knowingly obtained benefits from H.T. and Class Members as alleged herein under circumstances such that it would be inequitable and unjust for TikTok to retain them.

156.     Defendants have been knowingly enriched by revenues and profits it received from unjustly and illegally collecting and using the PII of children under the age of 18 to build profiles and target advertisements to those children.

157.     Defendants have failed to obtain legally valid consent from H.T. and Class Members or their parents and guardians to collect and use these minor children's PII.

158.     Defendants will be unjustly enriched if they are permitted to retain the benefits derived from the illegal collection and usage of H.T. and Class Members' PII.

159.     Plaintiff and Class Members are therefore entitled to relief, including disgorgement of all revenues and profits that TikTok earned as a result of its unlawful and wrongful conduct.

### COUNT 3
**Florida Deceptive and Unfair Trade Practices Act**
**Fla.  Stat.  §§ 501.201, *et seq.***

160.     Plaintiff re-alleges and incorporates by reference the allegations contained in paragraphs 1 through 139 above as if fully set forth herein.

161.     Plaintiff and Florida Subclass Members are "consumers" as defined by Fla.  Stat. § 501.203.

162.     TikTok advertised, offered, or sold goods or services in Florida and engaged in trade or commerce directly or indirectly affecting the people of Florida.

163.     TikTok engaged in unconscionable, unfair, and deceptive acts and practices in the conduct of trade and commerce, in violation of Fla.  Stat.  § 501.204(1), including:

    a.     Collecting PII from children who were younger than 18 years old without notifying their parents and obtaining verifiable parental consent beforehand;

    b.     Using PII from children who were younger than 18 years old without notifying their parents and obtaining verifiable parental consent beforehand;

    c.     Violating COPPA and the COPPA Rule; and

    d.     Selling PII from children who were younger than 18 years old without notifying their parents and obtaining verifiable parental consent beforehand.

164.    TikTok's representations and omissions were material because they were likely to deceive reasonable consumers about TikTok's data collection practices and the confidentiality of children's PII.

165.    Had TikTok disclosed to Plaintiff and Subclass Members that it collected, used, and sold children's data, TikTok would have been unable to continue in business and it would have been forced to adopt reasonable data practices and comply with the law.  TikTok was trusted with sensitive and valuable PII regarding millions of children, including Plaintiff and Subclass Members.  Accordingly, Plaintiff and Subclass Members acted reasonably in relying on TikTok's misrepresentations and omissions, the truth of which they could not have discovered.

166.    As a direct and proximate result of TikTok's unconscionable, unfair, and deceptive acts and practices, Plaintiff and Florida Subclass Members have suffered and will continue to suffer injury, ascertainable losses of money or property, and monetary and non- monetary damages, as described herein.

167.    Plaintiff and Florida Subclass Members seek all monetary and non-monetary relief allowed by law, including actual damages under Fla.  Stat.  § 501.211; declaratory and injunctive relief; reasonable attorneys' fees and costs, under Fla.  Stat.  § 501.2105(1); and any other relief that is just and proper.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, individually and on behalf of the other members of the Classes alleged herein, respectfully requests that the Court enter judgment as follows:

    A.    For an order certifying the Class under Rule 23 of the Federal Rules of Civil Procedure and naming Plaintiff as the representative for the Classes and counsel for Plaintiff as Class Counsel;

B.    For an order declaring the Defendants' conduct violates the causes of action referenced herein;

C.    For an order finding in favor of Plaintiff and Class Members on all counts asserted herein;

D.    For an order requiring Defendants to pay for lifetime credit monitoring and dark web scanning services for Plaintiff and the Classes;

E.    For compensatory, statutory, and punitive damages in amounts to be determined by the Court and/or jury;

F.    For prejudgment interest on all amounts awarded;

G.    For an order of restitution and all other forms of equitable monetary relief requiring the disgorgement of the revenues wrongfully retained as a result of the Defendants' conduct;

H.    For injunctive relief as pleaded or as the Court may deem proper;

I.    For an order awarding Plaintiff and Class Members their reasonable attorneys' fees and expenses and costs of suit, and any other expense, including expert witness fees; and

J.    Such other relief as this Court deems just and proper.

## DEMAND FOR JURY TRIAL

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiff demands a trial by jury of all claims in this Complaint and of all issues in this action so triable as of right.

Dated: March 25, 2025

Respectfully submitted,

 */s/ Jeff Ostrow*

Jeff Ostrow
Kristen Lake Cardoso
**KOPELOWITZ OSTROW P.A.**
1 West Las Olas Blvd., Ste. 500
Fort Lauderdale, FL 33301
Telephone: (954) 332-4200
Email: ostrow@kolawyers.com
Email: cardoso@kolawyers.com

James E.  Cecchi (*pro hac vice forthcoming*)
Jordan M. Steele (*pro hac vice forthcoming*)
William J. Manory (*pro hac vice forthcoming*)
**CARELLA, BYRNE, CECCHI,**
**BRODY & AGNELLO, P.C.**
5 Becker Farm Road
Roseland, New Jersey 07068
Telephone: (973) 994-1700
Email: jcecchi@carellabyrne.com
Email: jsteele@carellabyrne.com
Email: wmanory@carellabyrne.com

Jason H. Alperstein
**CARELLA, BYRNE, CECCHI,**
**BRODY & AGNELLO, P.C.**
2222 Ponce De Leon Blvd.
Miami, Florida 33134
Telephone: (973) 994-1700
Email: jalperstein@carellabyrne.com

*Attorneys for Plaintiff and the putative Class*